UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

|  |  |  |
|---|---|---|
| THE STATE OF GEORGIA, et al. | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 1:21-cv-163-RSB-BKE |
| JOSEPH R. BIDEN in his official capacity as President of the United States, et al. | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL AND FOR IMMEDIATE ADMINISTRATIVE STAY**

Defendants respectfully seek an emergency stay pending appeal of this Court's December 7, 2021 Order, ECF No. 94, which enjoined the federal government "from enforcing the vaccine mandate for federal contractors and subcontractors in all covered contracts in any state or territory of the United States of America." *Id.* at 27. Defendants also request that this Court enter an immediate administrative stay of that order while this Court considers Defendants' stay motion, and to allow the Eleventh Circuit time to consider an emergency stay motion if this Court does not issue one. Defendants anticipate filing a motion for stay pending appeal in the Eleventh Circuit by the end of the business day on Friday, December 10, unless this Court grants an administrative stay or a stay pending appeal before then.

Defendants understand this Court's order to prevent federal agencies from enforcing COVID-19 safety clauses included in certain categories of federal government contracts pursuant to Executive Order 14,042, so long as the preliminary injunction remains in place. Order at 27; *see also* Tr. of Dec. 3, 2021 Hearing 175:23–176:4 ("[T]o the extent this Court is inclined to issue a

1

preliminary injunction, that preliminary injunction should be limited to enjoining the enforcement of the COVID-19 safety clause in the injured contracts. It shouldn't extend to enjoining the inclusion of the COVID-19 safety clause in any . . . applicable federal contract."); Defs.' Consol. Opp'n, ECF No. 63 at 38 ("[Any] relief should merely block enforcement—not inclusion—of a COVID-19 safety clause.").

This Court should stay that preliminary injunction until Defendants have completed their appeal. Defendants respectfully submit that they may well prevail on appeal, and in all events, the federal government will suffer irreparable harm absent a stay, including harm to its ability to contract under terms of its choosing and other governmental interests—not to mention harm to third parties and to the public interest. In the alternative, this Court should stay its order insofar as it prohibits Defendants from enforcing COVID-19 safety clauses in federal contracts with non-parties—a stay that would cause Plaintiffs and Intervenors no prejudice while otherwise preserving the status quo as Defendants seek appellate review. Finally, Defendants seek clarification from this Court on whether the preliminary injuction bars private contractors from mutually agreeing to abide by the COVID-19 workplace safeguards and whether the injunction also bars enforcement of the masking and physical distancing protocols set forth in the Safer Federal Workforce Task Force Guidance.

## ARGUMENT

The factors governing a request for a stay pending appeal are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776

(1987)); *see also Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018). When the federal government is a party, its "harm and the public interest are one and the same, because the government's interest *is* the public interest." *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).

Further, "granting a stay that simply maintains the status quo pending appeal 'is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the [stay] would inflict irreparable injury on the movant.'" *LabMD, Inc. v. Fed. Trade Comm'n*, 678 F. App'x 816, 819 (11th Cir. 2016) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (per curiam)). For instance, when a district court vacated the CDC's nationwide COVID-19 eviction moratorium on the merits, the court still granted a stay pending appeal "to allow the D.C. Circuit time to review [her] ruling." *Ala. Ass'n of Relators v. U.S. Dep't of Health & Human Servs.*, No. 20-3377, 2021 WL 1946376, at *4 (D.D.C. May 14, 2021). Even though the court "believe[d] . . . there [wa]s not a substantial likelihood" that the government would "succeed on appeal," and even though "a majority of courts that ha[d] addressed the lawfulness of the" eviction moratorium "reached the same conclusion," the court concluded that the "serious legal questions" raised and "the public health consequences" of the COVID-19 pandemic "justif[ied] a stay." *Id*. at *4–5.

This Court should do the same. Although it has "conclude[d], based on the limited record before it, that Plaintiffs are more likely than Defendants to succeed on the issue of whether there is a sufficiently close nexus between EO 14,042 and the purposes of the Procurement Act," Order at 23, other aspects of this Court's opinion underscore the seriousness of the legal question. *Cf. id.* at 21 (acknowledging "that the President has typically been afforded deference when courts review executive orders issued pursuant to the Procurement Act"). Additionally, although one district

3

court has reached a similar merits conclusion on some aspects of plaintiffs' claims, it reached a different conclusion on the appropriate scope of relief. *See Kentucky v. Biden*, No. 3:21-55, 2021 WL 5587446, at *7, 14 (E.D. Ky. Nov. 30, 2021), *appeal filed*, No. 21-6147 (6th Cir. Dec. 6, 2021). Another district court, in a case brought by two employees of a state university, reached a contrary result on standing. *See Hollis v. Biden*, No. 1:21-163, 2021 WL 5500500, at *4 (N.D. Miss. Nov. 23, 2021), *appeal filed*, (5th Cir. Nov. 30, 2021). And the day before this Court's order, the Eleventh Circuit issued a published opinion that denied an injunction pending appeal of the denial of a preliminary-injunction motion to enjoin another set of COVID-19 safety requirements, on grounds similar to those Defendants advanced here. *Florida v. U.S. Dep't of Health & Human Servs.*, — F 4th —, No. 21-14098-JJ, Slip Op. at 33–34 (11th Cir. Dec. 6, 2021), *available at* https://media.ca11.uscourts.gov/opinions/pub/files/21-14098order.pdf (last accessed Dec. 8, 2021).

### a. The balance of harms and public interest warrant a stay pending appeal.

As this Court noted, "tragic toll that the COVID-19 pandemic has wrought throughout the nation and the globe" continues. Order at 1. Against that backdrop, the balance of the harms and the public interest weigh strongly in favor of a stay. Accordingly, Defendants address those factors first.

As the Deputy Director for Management at the Office of Management and Budget (OMB) put it, delaying the "implementation of the COVID-19 workplace safeguards issued pursuant to the Executive Order would result in a significant reduction in economy and efficiency in the Federal Government's procurement of essential services that are required to support the American people, combat the COVID-19 crisis, and carry out national security missions at a critical time for our Nation." Ex. A, Declaration of Jason Miller ¶ 3, Ex. A. These effects wil be felt across the $52

4

billion in goods and services the federal government procures nationwide each *month* under contracts principally performed in the United States.[1] *Id.* ¶ 10.

The productivity losses without COVID-19 safety protocols are obvious: "schedule delays," "leave and health care costs for workers who are sick, isolating, or quarantined and unable to perform," "reduced performance quality," "delays in companies being able to return teleworking employees safely to physical workplaces," "reprocurement costs" and "downstream program impacts where one Federal program is dependent on the timely performance of another program that is supported by a contractor impacted by the injunction." *Id.* ¶ 9. Indeed, the fact that at least one agency has thus far received "a substantial positive response to the addition of the clause among the contractor community" by reaching bilateral modifications to add the COVID-19 safety clause "in over 25,000 contracts" suggests that Defendants are far from alone in recognizing the significant economic disruption to federal contracting from the absence of the safety protocols. Decl. of Jeffrey A. Koses ¶ 13, Ex B.

More specifically, "mission disruptions" caused by the inability to enforce COVID-19 safety protocols "will hinder the Federal Government's ability to combat the current COVID-19 pandemic, respond to COVID-19 variants and future pandemics as they arise, and carry out National security missions." *Id.* ¶ 16. "For example, critical research and health-related missions such as those being performed at the nation's laboratories, at research universities, and by other

---

[1] While "the scope of contracts covered by Executive Order 14,042 is narrower than the $52 billion described above," since EO 14,042 does not compel inclusion of the clause requiring compliance with the relevant COVID-19 safety protocols in certain classes of contracts—including current contracts that are not up for renewal, extension, or option—the injunction appears to extend "more broadly than just the contracts covered by [EO] 14,042, because it also prohibits agencies from enforcing similar clauses requiring compliance with the relevant COVID-19 safety protocols added to contracts through bilateral contract negotiation." Miller Decl. ¶ 14. Accordingly, the Miller Declaration "assume[s] that almost all of the $52 billion in monthly procurement spending could be affected by this injunction." *Id.* ¶ 15.

contractors will be negatively affected," including efforts to "improve scientists' understanding of the virus' structure and biology towards developing future targeted therapies and vaccines" and "new designs for reusable masks and face shields." *Id.* at ¶ 17. In addition, "[a]gencies that interact with nearly all of the American people nationwide are supported in some capacity by contractors that help provide essential public services. These services include delivering social security benefits, providing health care to our veterans, and maintaining our transportation systems and infrastructure investments," all of which could be significantly impaced by the delay in implementing COVID-19 workplace safeguards. *Id.* ¶ 18.

Against these drastic harms to Defendants and to the public, the harm to Plaintiffs and Intervenors rest largely on the assumption that EO 14,042 and its implementing guidance are "likely to result in a reduction in available members of the workforce," an assumption that this Circuit recently dismissed as "entirely speculative." *Compare Florida*, Slip Op. at 40–42 *to* Order at 10, 14; *see also Brown v. U.S. Dep't of Health & Human Servs.*, 4 F.4th 1220, 1224 (11th Cir. 2021) (denying landlords a preliminary injunction in their challenge to the CDC eviction moratorium and noting that "the burden is on the plaintiffs to show [irreparable] injury—we cannot rely on our own intuition about how things will play out"). Plaintiffs' asserted compliance costs incurred thus far, moreover, do not constitute irreparable harm that is preventable through the preliminary injunction. *See* Order at 24–25.

Meanwhile, the Fifth Circuit's pronouncement that "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance," *BST Holdings, LLC v. Occupational Safety and Health Admin.*, 17 F.4th 604, 618 (5th Cir. 2021), on which this Court relied, Order at 24–25, collapses two elements of the four-part preliminary-injunction test and conflicts with the Supreme Court's admonition that "[a]n injunction . . . does

6

not follow from success on the merits as a matter of course." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). Finally, because "a preliminary injunction is 'the exception rather than the rule,'" the mere "[p]ossibility of an irreparable injury is not enough." *Brown*, 4 F.4th at 1224 (quoting *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983)).

      **b. Defendants are likely to succeed on the merits.**

Defendants acknowledge that this Court "conclude[d], based on the limited record before it, that Plaintiffs are more likely than Defendants to succeed on the issue of whether there is a sufficiently close nexus between EO 14,042 and the purposes of the Procurement Act." Order at 23. Defendants respectfully submit that the Eleventh Circuit likely will hold to the contrary on appeal.

The President, to whom FPASA expressly grants "a broad delegation of power" to manage federal procurement, *see* Order at 11, acted well within his delegated authority in issuing a federal contractor vaccine requirements for COVID-19 workplace safeguards for certain covered federal contractors, including a vaccination requirement for covered contractor employees.

FPASA expressly empowers the President to "prescribe policies and directives that the President considers necessary to carry out" the Act's purpose of creating an "economical and efficient system" of federal procurement. 40 U.S.C. §§ 101, 121(a). A presidential policy or directive must be "consistent" with FPASA, 40 U.S.C. § 121(a)—that is, it must "reasonably relate[] to . . . ensuring efficiency and economy in government procurement." *Liberty Mut. Ins. Co. v. Friedman*, 639 F.2d 164, 170 (4th Cir. 1981); *accord AFL-CIO v. Kahn*, 618 F.2d 784, 793 & n.49 (D.C. Cir. 1979) (en banc).

EO 14,042 easily satisfies this "lenient" standard. *See UAW-Lab. Emp. & Training Corp. v. Chao*, 325 F.3d 360, 366 (D.C. Cir. 2003). Faced with a once-in-a-century pandemic that

7

upended the American economy, threatened the health of the American workforce, and disrupted the operations of federal contractors, it is hard to conceive of a procurement policy that would be more likely to create safer contractor work environments, reduce employee absenteeism, and reduce contractors' cost of labor over the long term than a vaccination requirement for contractor employees.

Moreover, the Eleventh Circuit recently rejected arguments that another COVID-19 safety requirement pertaining to facilities receiving Medicare and Medicaid funding likely exceeded the executive branch's statutory authority and, in so doing, examined and rejected many of the arguments Plaintiffs advanced here. For starters, the Eleventh Circuit rejected the "flawed" "premise" that the vaccination requirement "violates the major questions doctrine," which was central to this Court's analysis. *Compare Florida*, Slip Op. at 31 *to* Order at 19–20. The appeals court also dismissed the argument that the Secretary of Health and Human Services's actions were unprecedented and not explicitly set out in the applicable statutory authority—a theory on which this Court similarly relied in reaching its conclusion that the President lacked statutory authority to issue EO 14,042. Order at 22–23. The Eleventh Circuit concluded that "a broad grant of authority such as Congress has given the Secretary here," *Florida* Slip Op. at 32—analogous to the "particularly direct and broad-ranging authority authority" the President has under the Federal Property and Administrative Services Act, *AFL-CIO v. Kahn*, 618 F.2d 784, 789 (D.C. Cir. 1979)—"does not require an indication that specific activities are permitted. And it's no surprise that CMS has never enforced a vaccine mandate because vaccinations for healthcare employees have never been an issue of economic and political significance before now." Slip Op. at 32. Further, the Eleventh Circuit rejected an argument, similar to the one Plaintiffs advanced and this

Court acknowledged, Order at 23, that the Medicare and Medicaid vaccination requirement harms a state's sovereign interests and creates a Tenth Amendment issue, Slip Op. at 40–41.[2]

Here, Supreme Court precedent holds that just like private businesses, the Federal Government enjoys "unrestricted power . . . to determine those with whom it will deal[] and to fix the terms and conditions upon which it will make needed purchases." *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127 (1940). This Court's conclusion stands in considerable tension to that holding—not to mention background principles of federalism and of contract law—by forcing the federal government to contract with the plaintiff states and intervenors on terms of their choosing.

To be sure, neither *Florida* nor *Lukens Steel* addresses the Procurement Act. But multiple Circuits—including this one[3]—have held that the Procurement Act "vest[s] broad discretion in the President" that "certainly reach[es] beyond any narrow concept of efficiency and economy in procurement." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1330–33 (D.C. Cir. 1996) (collecting examples). Therefore, this case raises at least serious legal questions, which merit a stay pending appeal.

---

[2] Mindful that a party's notice of supplemental authority may not "contain argument in support" of its position, Defendants limited their prior notice about the Eleventh Circuit's opinion to "a brief statement directing the Court to the legal argument[s] to which the supplemental filing pertain[ed] in the previously filed legal memorandum." *Girard v. Aztec RV Resort, Inc.*, No. 10-62298, 2011 WL 4345443, at *3 (S.D. Fla. Sept. 16, 2011); *see* Defs.' Supp'l Notice, ECF No. 92.

[3] *See Farkas v. Tex. Instrument, Inc.*, 375 F.2d 629, 632 n.1 (5th Cir. 1967) (upholding a Presidential Executive Order imposing anti-discrimination requirements for government contractors). *See generally Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (noting that Fifth Circuit decisions handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit).

9

**III. The Court should stay its order as to non-parties or, if it does not issue such a stay, at least clarify that the United States is not enjoined from entering into mutual, voluntary agreements with non-party contractors to add and enforce the COVID-19 safety protocols or from enforcing the masking and distancing protocols.**

Setting the merits aside, at a minimum, this Court should stay its order insofar as it prohibits Defendants from enforcing COVID-19 safety clauses in federal contracts with non-parties. As the Supreme Court has explained, because this Court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," any "remedy must be tailored to redress the plaintiffs' particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1933–34 (2018); *see also Madsen v. Women's Health Ctr. Inc.*, 512 U.S. 753, 765 (1994). But this Court's order appears to exceed that limitation by enjoining the United States from "enforcing the vaccine mandate," not just with respect to contracts with the named Plaintiffs and with Intervenors, but "for federal contractors and subcontractors in all covered contracts in any state or territory of the United States of America." Order at 29.

Defendants respectfully contend that they are likely to prevail on that issue on appeal. Multiple Supreme Court Justices have already expressed skepticism about universal injunctions such as this one. *See, e.g.*, *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring); *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring); *see also Florida*, Slip Op. at 18 ("[T]he court could have provided complete relief to the plaintiffs with an injunction limited in scope to the" parties. "Yet it nonetheless awarded relief to nonparties. Jurists and scholars have called into question both the wisdom and propriety of granting relief to nonparties."). Accordingly, even if this Court does not stay its order in its entirety, this Court should limit its injunction to only prohibit Defendants from enforcing COVID-19 safety clauses contained in federal contracts to which Plaintiffs (or related state agencies or subdivisions) and Intervenors are a party.

Plaintiffs and Intervenors have no basis to ask for more: Supreme Court precedent forecloses the states' ability to bring suit against the federal government "to protect her citizens from the operation of federal statutes" like the Procurement Act, and Associated Builders and Contractors, Inc. cannot assert associational standing on behalf of non-members. *See Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007); *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 610 n.16 (1982) ("A State does not have standing as *parens patriae* to bring an action against the Federal Government." (citing *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923), and *Missouri v. Illinois*, 180 U.S. 208, 241 (1901))); *cf. Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Nor would they be harmed by a narrower injunction: because the federal government does not "invade[] areas reserved to the States by the Tenth Amendment simply because it exercises its authority . . . in a manner that displaces the States' exercise of their police powers," *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981), there is no threat to the plaintiff states' sovereignty that would justify enjoining enforcement of COVID-19 safety clauses with nonparties. Accordingly, even if this Court does not stay its order in its entirety, it should limit its injunction to only prohibit Defendants from enforcing COVID-19 safety clauses contained in federal contracts to which Plaintiffs and Intervenors are a party.

Additionally, Defendants respectfully request that this Court clarify two aspects of the preliminary injunction. First, Defendants request that clarification that the preliminary injunction does not prohibit private federal contractors from mutually agreeing with Defendants to include COVID-19 safety clauses in their federal contracts, thus allowing those federal contractors to voluntarily comply with the Task Force guidelines, including requiring their employees to be

vaccinated.[4][5] Second, Defendants request clarification of whether the preliminary injunction is limited to enforcement of the Safer Federal Workforce Task Force's vaccination requirements, of whether it also prevents federal agencies from enforcing requirements related to masking and physical distancing and the identification of a person or persons to coordinate COVID-19 workplace safety efforts at covered contractor workplaces. *See* Determination of the Acting OMB Director Regarding the Revised Safer Federal Workforce Task Force Guidance for Federal Contractors and the Revised Economy & Efficiency Analysis, 86 Fed. Reg. 63418, 63,420–21 ("OMB Determination").

## CONCLUSION

Defendants respectfully request that this Court stay its order pending appeal and enter an immediate administrative stay while this motion is under consideration.

Dated: December 9, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

DAVID ESTES

---

[4] While counsel for Plaintiffs claimed that the "only source of authority for all of those . . . bilateral contracts are in" EO 14,042, that is incorrect. Agencies are free to negotiate voluntary nonmonetary clauses into federal contracts subject to applicable law, just like private parties, in accordance with ordinary principles of contract law. *See United States v. Winstar Corp.*, 518 U.S. 839, 870–71 (1996) ("applying ordinary principles of contract construction" to a federal government contract "that would be applicable to any contract action between private parties"); *cf. Tyler Const. Group v. U.S.*, 570 F.3d 1329 (2009) ("[T]he proper inquiry is not whether the FAR authorizes the use of IDIQ contract" or, by extension, a particular contract clause "for a procurement . . . but whether there is any statutory or regulatory provision that precludes such use.").

[5] Given that the General Services Administration (GSA) alone has "reached bilateral modifications to add the clause in over 25,000 contracts" for a wide range of services, this clarification would potentially impact an enourmous number of federal contracts. Koses Decl. ¶ 13.

United States Attorney

BRAD P. ROSENBERG
Assistant Branch Director
Civil Division

/s/ *Vinita B. Andrapalliyal*
VINITA B. ANDRAPALLIYAL
LEE REEVES
KEVIN J. WYNOSKY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-0845
Fax: (202) 616-8470
E-mail: vinita.b.andrapalliyal@usdoj.gov


/s/ *Bradford C. Patrick*
Bradford C. Patrick
Assistant United States Attorney
South Carolina Bar No. 102092
Post Office Box 8970
Savannah, Georgia 31412
Telephone: (912) 652-4422
Email: bradford.patrick@usdoj.gov

*Attorneys for Defendants*