**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

The State of Georgia, et al.,

                    Plaintiffs,

v.

Joseph R. Biden in his official capacity as

President of the United States, et al.,

                    Defendants.

Civil Action No. 1:21-cv-163-RSB-BKE

**PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' REQUEST FOR**
**CLARIFICATION OF THE DECEMBER 7, 2021 ORDER**

1

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 3

BACKGROUND .................................................................................................. 6

    I.    Executive Order 14042 ........................................................................ 6

    II.    Preliminary Injunction Proceedings.................................................. 7

    III.    The Injunction ..................................................................................... 9

    IV.    Subsequent Developments ................................................................ 10

ARGUMENT...................................................................................................... 12

    I.    The Court Lacks Jurisdiction To "Clarify" The Injunction Pending Appeal ................................................................................................. 12

    II.    If This Court Concludes It Has Jurisdiction To Decide Defendants' Clarification Request, It Should Say The Injunction Means What It Says ..................................................................................................... 14

        A.    This Court's Preliminary Injunction Clearly Prohibits Defendants From Enforcing Any COVID-19 Task Force Guidance Clause ................................................................ 15

        B.    Nothing In The Preliminary Injunction Prohibits Employers From Adopting COVID-19 Protection Measures As A Matter Of Their Own Policies, Without Any Enforcement By Defendants 17

CONCLUSION ................................................................................................... 18

## INTRODUCTION

In its December 7 Order enjoining Executive Order 14042, this Court could not have been clearer: "Plaintiffs will likely succeed in their claim that the President exceeded the authorization given to him by Congress through the Federal Property and Administrative Services Act when issuing Executive Order 14042." Doc.94 at 2. Accordingly, this Court enjoined Defendants from enforcing EO 14042 in any respect, including enforcing what Defendants now call the "COVID-19 safety clauses" that Defendants developed and inserted into various contracts pursuant to the unlawful EO (hereinafter "COVID-19 Task Force Guidance Clause"). Doc.94 at 1–2, 26–27. Defendants immediately understood that the scope of this Court's injunction applied to the whole of EO 14042, including every COVID-19 Task Force Guidance Clause that they inserted into *any* contract, as reflected by Defendants' prompt announcement: "**For existing contracts or contract-like instrument . . . that contain a clause implementing requirements of Executive Order 14042:** The Government will take no action to enforce the clause implementing requirements of Executive Order 14042." *For Federal Contractors*, Safer Federal Workforce Task Force.[1]

Now, in a single, conclusory paragraph at the end of their since-withdrawn motion for a stay pending appeal, Defendants purport to ask for two clarifications of this Court's injunction. First, they ask for clarification that the preliminary injunction "does not prohibit private federal contractors from mutually agreeing with

---

[1] *Available at* https://www.saferfederalworkforce.gov/contractors/ (all websites last visited Jan. 7, 2022).

Defendants to include COVID-19 safety clauses in their federal contracts, thus allowing those federal contractors to voluntarily comply with the Task Force guidelines, including requiring their employees to be vaccinated." Doc.97 at 11–12. Second, they ask this Court to permit "federal agencies [to] *enforc[e]* requirements related to masking and physical distancing and the identification of a person or persons to coordinate COVID-19 workplace safety efforts at covered contractor workplaces." Doc.97 at 12 (emphasis added).

This Court should deny Defendants' request for "clarification," which is really a request for modification. As a threshold matter, this Court lacks jurisdiction to issue the clarification that Defendants seek because Defendants made the entirely voluntary decision to file their notice of appeal before requesting or receiving "clarification" from this Court. If, however, this Court concludes that it has jurisdiction to entertain Defendants' one-paragraph request, it should simply state that the injunction needs no clarification because it says what it means and means what it says: Plaintiffs are likely to succeed in their claim that EO 14042 is unlawful and, accordingly, ***Defendants can take no action during the pendency of this litigation to enforce any aspect of EO 14042, including enforcing any COVID-19 Task Force Guidance Clause in any federal contract***.

If federal contractors want to voluntarily impose COVID-19-related rules on their employees—including rules modeled on the COVID-19 Task Force Guidance Clause—they do not need a COVID-19 Task Force Guidance Clause in a federal contact to do so.  What Defendants characterize as "voluntary" in their request for clarification is anything but voluntary.  Prior to issuance of the injunction, Defendants relied on the "strongly encouraged" language in EO 14042 to require federal contractors to accept through bilateral modification COVID-19 Task Force Guidance clauses in existing contracts. *See, e.g.,* Doc.76-3 at ¶¶5-13.  And because federal contracts include clauses that allow the government to terminate the contract if a contractor does not accept a bilateral modification (Doc.76-3 at ¶14), federal contractors had no choice but to accept these clauses.  As new and renewal contracts issued, Defendants used EO 14042 to insert COVID-19 Task Force Guidance Clauses into those contracts.  The preliminary injunction properly prohibits Defendants from enforcing EO 14042 in its entirety in existing, new and renewal contracts.  That is the status quo, and the Eleventh Circuit has held that this status quo would not cause irreparable injury to Defendants.  Order at 2, *Georgia v. Biden*, 11th Cir. No. 21-14269-F (Dec. 17, 2021).[2]  Defendants' request for clarification is clearly an improper attempt to narrow the preliminary injunction which this Court should not allow.

---

[2] Defendants Motion for Stay of the District Court's December 7, 2021 Order Pending Appeal filed in the Eleventh Circuit includes the same declarations of Jason Miller and Jeffrey Koses that Defendants include in their clarification request.

## BACKGROUND

### I.   Executive Order 14042

EO 14042 requires federal agencies to force federal contractors to "provide adequate COVID-19 safeguards to their workers performing on or in connection with a Federal Government contract or contract-like instrument," based solely on the President's purported authority under the Procurement Act to promote "economy and efficiency in Federal procurement." 86 Fed. Reg. 50,985, 50,985 (Sept. 9, 2021); *see also* Doc.94 at 3.  As relevant here, the implementing guidance—developed by the Task Force and approved by the OMB Director as directed by EO 14042 — "requires all 'covered contractors' to be fully vaccinated by January 18, 2022, unless they are 'legally entitled to an accommodation,'" and to comply with "masking and physical distancing" protocols.  Doc.94 at 4; COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors at 5–7 (updated Nov. 10, 2021).[3]  The Federal Acquisition Regulatory Council thereafter developed the COVID-19 Task Force Guidance Clause (i.e., FAR Deviation Clause 52.223-99) as required by EO 14042. That clause simply incorporates the Task Force's guidance by reference.

EO 14042 provides two mechanisms for inserting COVID-19 Task Force Guidance Clauses into federal contracts.  First, such Clauses are automatically inserted into "any new contract; new contract-like instrument; new solicitation for a contract or contract-like instrument; extension or renewal of an existing contract or contract-like instrument; and exercise of an option on an existing contract or contract-

---

[3] *Available at* https://www.saferfederalworkforce.gov/downloads/Guidance%20for%20Federal %20Contractors_Safer%20Federal%20Workforce%20Task%20Force_20211110.pdf.

like instrument." 86 Fed. Reg. at 50,986 (§ 5(a)); *see also* Doc.94 at 3–4. Second, "[f]or all existing contracts and contract-like instruments," agencies are "*strongly encouraged*" to insert COVID-19 Task Force Guidance Clauses into such existing federal contracts. 86 Fed. Reg. at 50,987 (§ 6(c)) (emphasis added).

As required by EO 14042, the Safer Federal Workforce Task Force and Federal Acquisition Regulatory ("FAR") Council developed implementing guidance and regulations for the foregoing requirements, with the latter listing the types of solicitations and contracts in which agencies "are *required* to include" the COVID-19 Task Force Guidance Clause under the EO. 86 Fed. Reg. at 50,985–86 (§§ 2, 3); FAR Council Guidance at 2 (Sept. 30, 2021) (emphasis added);[4] *see also* Doc.94 at 6. But, consistent with EO 14042's requirement and as contemplated by the Task Force Guidance itself, the FAR Council Guidance reiterates that, "[t]o maximize the goal of getting more people vaccinated and decrease the spread of COVID-19, the Task Force strongly encourages agencies to apply the guidance requirements of its guidance broadly, . . . by including the clause in" other types of contracts that are not otherwise covered by EO 14042. FAR Council Guidance at 3; *see also* Doc.94 at 6–7.

## II.   Preliminary Injunction Proceedings

At the preliminary injunction stage, Plaintiffs presented the Court extensive, unrebutted evidence concerning the Defendants' efforts to use EO 14042 to force Plaintiffs to include COVID-19 Task Force Guidance Clauses in their new and existing contracts. With respect to new contracts, Georgia Tech identified a recent

---

[4]    *Available at* https://www.whitehouse.gov/wp-content/uploads/2021/09/FAR-Council-Guidance-on-Agency-Issuance-of-Deviations-to-Implement-EO-14042.pdf.

bid solicitation from NASA.  Doc.94 at 13 (citing Doc. 76-1; Tr. at 23:15–24:13).  With respect to existing contacts, Plaintiffs provided unsolicited emails from Defendants' employees forcing Plaintiffs to incorporate COVID-19 safety clauses into their existing contracts, which Plaintiffs were told they "**will sign and return the modification via email to the Contracting Officer of record by November 9, 2021**," Doc.76-3, Ex. B at 5, or "**Effective immediately, and no later than October 15, 2021,**" because the agencies were "**required to modify these existing contracts**" under EO 14042 and its implementing regulations and guidance, Doc.76-3, Ex. C at 3–4.  Where Plaintiffs acted as Federal subcontractors, they received email instructions to "flow down the clause as required" under EO 14042, demanding it be incorporated into subcontracts "**as soon as possible**."  Doc.76-3, Ex. F at 2.  Left with no choice, Plaintiffs acquiesced to the coercive demands to incorporate the COVID-19 Task Force Guidance Clause in new and existing contracts alike.  *See, e.g.*, Doc.55-1 ¶¶ 4, 6; Doc.55-2 ¶¶ 7, 8; Doc. 55-3 ¶¶ 3–4, 7, 8; Doc.76-3 ¶¶6-14; Tr. at 65:8–21.

All told, Plaintiffs have thousands of federal contracts and subcontracts, making compliance with COVID-19 Task Force Guidance Clauses nearly impossible.  *See* Docs. 55-12 ¶ 18,19; 55-1 ¶ 8; 55-2 ¶ 7; 55-3 ¶ 6 (the Board of Regents for the University System of Georgia have over 2,000 federal contracts, worth over $736,000,000 in FY 2021 alone); Docs. 55-1–55-10, 55-12–55-14, 76-4.  As set forth at the preliminary injunction hearing, Plaintiffs incurred great costs and expended significant human resources attempting to comply with EO 14042.  For example, the Board of Regents universities began: (1) tracking employee vaccination statuses; (2) creating a process to review accommodation requests; (3) identifying impacted

8

employees and locations; (4) spending money to ensure compliance; and (5) tracking the above data from their subcontractors to ensure that they also comply with EO 14042.  Doc. 55-1 ¶ 13; 55-2 ¶ 11; 55-13 ¶ 5.  And even perfect compliance means lost personnel, institutional employee knowledge, and specialized workers; damage to reputation and goodwill; and mission failure.  Doc. 55-1 ¶ 18; 55-2 ¶ 15; 55-3 ¶ 10; 55-4 ¶ 10; 55-13 ¶ 10; Doc. 94 at 24–25; Tr. at 32:12–35:10, 71:21–73:07, 94:14–96:15.

## III.  The Injunction

On December 3, 2021, this Court held a hearing on the Plaintiffs' preliminary injunction motions "against enforcement of Executive Order 14042." Doc.91; Doc.94 at 1.  It subsequently enjoined the enforcement of EO 14024. Doc.94. at 26 ("Accordingly, the Court finds that the balancing of the harms weighs heavily in favor of enjoining the enforcement of EO 14042; *id.* at 27 ("enjoin the enforcement of the mandate"; "Defendants are **ENJOINED**, during the pendency of this action or until further order of this Court, from enforcing the vaccine mandate").

The Court based its injunction, as relevant, on its conclusion that Plaintiffs would likely succeed on the merits because EO 14024 exceeds the President's Procurement Act authority.  *Id.* at 21–23.  It explained that "EO 14042 goes far beyond addressing administrative and management issues in order to promote efficiency and economy in procurement and contracting, and instead, in application, works as a regulation of public health, which is not clearly authorized under the Procurement Act."  *Id.* at 20.  It also held "that the *directives contained within EO 14042* were not authorized by the Procurement Act."  *Id.* at 21 (emphasis added).  The Court specifically rejected the Defendants' argument that "the safeguards in the Task

Force Guidance" (which contains the masking and physical distancing protocols that make up the COVID-19 Task Force Guidance Clause) create "a sufficiently close nexus" with "the purpose of the Procurement Act." *Id.* at 21–22 (cleaned up). "Simply put, *EO 14042's directives and resulting impact* radiate too far beyond the purposes of the Procurement Act and the authority it grants to the President." *Id.* at 23 (emphasis added). Finally, in an effort to ensure that its injunction reached "all covered contracts" in the United States, the court explained that the preliminary injunction must be nationwide. *Id.* at 26–27. "[L]imiting the relief to only those before the Court would prove unwieldy and would only cause more confusion." *Id.* at 27.

## IV. Subsequent Developments

In response to this preliminary injunction, Defendants, plainly understanding the scope of it, issued updated guidance stating "[t]he Government will take no action to *enforce* the clause implementing requirements of Executive Order 14042" in existing federal contracts. *For Federal Contractors*, Safer Federal Workforce Task Force (emphasis added);[5] *see also* Doc.97-1 ¶ 14 (OMB Deputy Director plainly acknowledging that "the scope of the injunction . . . prohibits agencies from enforcing similar clauses requiring compliance with the relevant COVID-19 safety protocols *added to contracts through bilateral contract negotiation*") (emphasis added). At no point did Defendants attempt to separate the masking and physical distancing

---

[5] *Available at* https://www.saferfederalworkforce.gov/contractors/.

requirements from the vaccine requirements in COVID-19 Task Force Guidance Clauses.

Following entry of the preliminary injunction, Plaintiffs suspended efforts to comply with EO 14042, including any COVID-19 Task Force Guidance Clause that had, or would have, been inserted into their federal contracts.  Plaintiffs-Appellees' Motion in Opposition to a Stay, Ex. 1 ¶ 6; Ex. 2 ¶ 4; Ex. 3 ¶ 5, *Georgia v. Biden*, 11th Cir. No. 21-14269-F (Dec. 15, 2021).

On December 9, 2021, Defendants filed a notice of appeal of the Court's preliminary injunction order and opinion to the U.S. Court of Appeals for the Eleventh Circuit.  Doc.96; *see* 28 U.S.C. § 1292(a)(1).

Shortly after, Defendants moved for an "emergency stay pending appeal" and an "immediate administrative stay" of the injunction in this Court, arguing, among other things, that they are likely to prevail on their appeal.  Doc.97.  In a single paragraph at the very end of their stay motion, Defendants also purported to ask for two "clarifications" of this Court's injunction.  First, they asked for clarification that contractors can "mutually agree" with Defendants to "voluntarily" insert so-called "COVID-19 safety clauses in their federal contracts," and thereafter "voluntarily" comply with the Task Force Guidance, including vaccine requirements.  Doc.97 at 11-12.  Second, they asked this Court to permit "federal agencies [to] *enforc[e]* requirements related to masking and physical distancing and the identification of a person or persons to coordinate COVID-19 workplace safety efforts at covered contractor workplaces."  Doc.97 at 12 (emphasis added).

The next day, Defendants moved to stay the District Court's December 7, 2021 Order pending appeal in the Eleventh Circuit. *Georgia v. Biden*, 11th Cir. No. 21-14269-F (Dec. 10, 2021). The Eleventh Circuit denied the requested stay because Defendants had failed to show that they "will be irreparably injured absent a stay" of this Court's injunction. Order at 2, *Georgia v. Biden*, 11th Cir. No. 21-14269-F (Dec. 17, 2021). The Eleventh Circuit expedited briefing on the merits of Defendants' appeal, with opening and response briefs due on January 18, 2022 and February 8, 2022, respectively. Order at 1, *Georgia v. Biden*, 11th Cir. No. 21-14269-F (Dec. 21, 2021). Oral argument is scheduled for the week of April 4, 2022. Notice at 1, *Georgia v. Biden*, 11th Cir. No. 21-14269-F (Dec. 21, 2021).

In this Court, Defendants withdrew their stay motion following the Eleventh Circuit's denial of their similar motion. However, they continued to press their two requests for "clarification" of the injunction at issue here. Doc.105 at 2–3 (quoting Doc.97 at 2).

## ARGUMENT

## I.   The Court Lacks Jurisdiction To "Clarify" The Injunction Pending Appeal

A. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam). "[A] district court generally is without jurisdiction to rule in a case that is on appeal." *Zaklama v. Mt. Sinai Medical Center*, 906 F.2d 645, 649 (11th Cir. 1990); *United States v. Hitchmon*, 602 F.2d 689,

692 (5th Cir. 1979) (en banc), *superseded by statute on other grounds* ("The district court is divested of jurisdiction to take any action with regard to the matter except in aid of the appeal.").[6]  The District Court retains authority over only those "collateral matters not affecting the questions presented on appeal." *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999).

Accordingly, multiple courts of appeals "have held, or at least strongly implied, that the district court may not alter the injunction once an appeal has been filed except to maintain the status quo of the parties pending the appeal." *Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 819 (5th Cir. 1989) (noting consistency of such a rule with *Griggs*); *see MillerCoors LLC v. Anheuser-Busch Companies, LLC*, 940 F.3d 922, 923 (7th Cir. 2019) (when an injunction is on appeal, district courts may "make changes linked to bonds or otherwise secure the enjoined party's rights," which "differs from a blanket grant of permission to impose new obligations, and substantially alter the issues, while appeals are pending").[7] Any other rule would be nonsensical; changing the scope of an injunction that is currently being reviewed on appeal is the *core example* of an "aspect[]" of the "case" that is "involved in the appeal." *Griggs*, 459 U.S. at 58. Indeed, the injunction is not just an *aspect* of this appeal, it *is* the appeal. As one district court has put it, the "determination of the proper scope of the preliminary injunction . . . is, in fact, a subject of the pending appeal" and revising

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[7] *See also Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1392 n. 1 (9th Cir. 1984); *Lewis v. Tobacco Workers' Int'l Union*, 577 F.2d 1135 (4th Cir. 1978); *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623 (2d Cir. 1962).

the injunction pending appeal would "impermissibly 'move the target' for the court of appeals." *Int'l Refugee Assistance Project v. Trump*, 2017 WL 1315538, at *2 (D.Md. Apr. 10, 2017) (citation omitted).

B. The Court thus lacks jurisdiction to provide Defendants' requested "clarification." The Court stated that the entirety of "EO 14042's directives and resulting impact radiate too far beyond the purposes of the Procurement Act and the authority it grants to the President." Doc.94 at 23. By filing a notice of appeal before even asking this Court to "clarify" (i.e., modify) the plain language of its injunction, the Defendants have placed the question of whether any of EO 14042's directives and impacts are likely permissible under the Procurement Act before the appellate court to decide. Any clarification would qualify as an "alter[ation]" of the injunction, and is thus beyond this Court's jurisdiction given Defendants' decision to file their notice of appeal. *Coastal Corp.*, 869 F.2d at 819; *see Griggs*, 459 U.S. at 58.

## II. If This Court Concludes It Has Jurisdiction To Decide Defendants' Clarification Request, It Should Say The Injunction Means What It Says

If the Court finds that it has jurisdiction to "clarify" its injunction pending appeal, it should conclude that the injunction requires no clarification: Defendants can take no action to *enforce* any aspect of the regime under EO 14042, including enforcing any COVID-19 Task Force Guidance Clause in any new or existing federal contract, including as to vaccination, masking, physical distancing, or testing. The injunction does nothing to prohibit any contractor from imposing workplace rules on their own employees, including if those workplace rules happened to be modeled on the COVID-19 Task Force Guidance Clause. But Defendants cannot attempt to make

such requirements part of their contracts while this preliminary injunction is pending.

### A. This Court's Preliminary Injunction Clearly Prohibits Defendants From Enforcing Any COVID-19 Task Force Guidance Clause

This Court's preliminary injunction could not have been clearer: Defendants cannot enforce any aspect of EO 14042, which includes all COVID-19 Task Force Guidance Clauses that Defendants inserted into federal contracts. The Court held that Plaintiffs would likely succeed on the merits because EO 14024 exceeds the President's Procurement Act authority.  Doc.94 at 21–23.  It explained that "*EO 14042* goes far beyond addressing administrative and management issues in order to promote efficiency and economy in procurement and contracting, and instead, in application, works as a regulation of public health, which is not clearly authorized under the Procurement Act."  *Id*. at 20 (emphasis added).  It also held "that *the directives contained within EO 14042* were not authorized by the Procurement Act." *Id*. at 21 (emphasis added).  Defendants themselves understood what this means, explaining that "[t]he Government will take no action to enforce the clause implementing requirements of Executive Order 14042" in existing contracts.  That is what Plaintiffs moved for, and the Court granted Plaintiffs' motion—it was not granted in part and denied in part. Doc.55 at 29 ("Plaintiffs respectfully ask this Court to preliminarily enjoin Defendants from implementing and enforcing the Contractor Mandate.").

This covers any COVID-19 Task Force Guidance Clause that Defendants previously inserted into federal contracts, regardless of whether those Clauses were

automatically inserted into new contracts pursuant to § 5(a) of EO 14042 or agencies inserted those clauses into existing contracts pursuant to § 6(c) of EO 14042.  86 Fed. Reg. at 50,986–87; *see supra*, at 4–5.  Soon after EO 14042 was issued, federal prime and subcontractors, like Plaintiffs, began receiving demands from Defendants or prime contractors to either include COVID-19 Task Force Guidance Clauses in new contracts or their existing contracts *as required by EO 14042*.  *See* Doc.94 at 13 (discussing Georgia Tech's experience with a NASA bid solicitation) (citing Doc. 76-1 at 4–9; Tr. at 23:15–24:13); Doc.76-3, Ex. B at 5 (requiring Plaintiffs "**sign and return the modification via email to the Contracting Officer of record by November 9, 2021**"); Doc.76-3, Ex. C at 3–4 (the same, "**Effective immediately, and no later than October 15, 2021**"); Doc.76-3, Ex. F at 2 (the same, from a prime contractor "flow[ing] down the clause as required" under EO 14042).  Defendants have never tried to suggest there is any basis for inclusion of those clauses into Plaintiffs' contracts other than the unlawful EO 14042.

It would be extremely disruptive to permit enforcement of COVID-19 Task Force Guidance Clauses in federal contracts while this matter is on appeal.  As the Defendants themselves have conceded, *one federal agency alone* has over 25,000 existing contracts containing the forcibly inserted clauses.  Doc.97 at 5; Doc.97-2 ¶ 13 (discussing Government Services Administration contracts).  Reversing course from what the Defendants themselves have announced and permitting Defendants to begin enforcing the masking and physical distancing provisions within COVID-19 Task Force Guidance Clauses in every contract with every federal agency would

significantly and irreparably harm Plaintiffs and alter the status quo. *See* Doc.94 at 24–26; Doc.55-1 ¶ 13; Doc.55-2 ¶ 11; Doc.55-13 ¶ 5.

These concerns are significant for any enforcement of the COVID-19 Task Force Guidance Clause's masking, testing, and physical distancing requirements, which appears to be the only aspect of the existing Clauses that Defendants ask this Court to permit them to enforce. As set forth in testimony at the preliminary injunction hearing, these non-vaccine requirements would "change the delivery of our mission" and "institutionally change how we deliver on our academic mission and our research mission, which are intimately coupled." Tr. at 40:11-41:12 (testifying as to the effect physical distancing requirements would have on the ability to deliver in-person instruction at Georgia Tech). The masking and social distancing requirements would impair core aspects of Plaintiffs' operations. *Id.*[8]

### B.   Nothing In The Preliminary Injunction Prohibits Employers From Adopting COVID-19 Protection Measures As A Matter Of Their Own Policies, Without Any Enforcement By Defendants

Defendants also "request [a] clarification that the preliminary injunction does not prohibit private federal contractors from mutually agreeing with Defendants to

---

[8] Defendants improperly attempt to assert in a brief footnote that they can create and enforce contractual provisions even when not relying on the Procurement Act. *See* Doc.97 at 12 n.4. In so arguing, Defendants ignore that "[a]n agency literally has no power to act . . . unless and until Congress confers power upon it." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Regardless, Defendants cannot plausibly argue that any federal agency would be seeking these modifications but for EO 14042, which cites the Procurement Act as its source of substantive authority. If another source of authority existed, surely Defendants would have relied on it from the beginning, rather than mention it in a conclusory footnote in a last-ditch motion for clarification. And Defendants overread their cases anyway. The two they cite—a plurality opinion in *United States v. Winstar Corp.*, 518 U.S. 839 (1996) and the Federal Circuit decision in *Tyler Const. Group v. United States*, 570 F.3d 1329 (Fed. Cir. 2009)—stand, at most, for the general proposition that federal contracting is subject to applicable federal law. *Winstar*, 518 U.S. at 870–71 (plurality op.); *Tyler*, 570 F.3d at 1333 (quoting FAR § 1.102(d), 48 C.F.R. § 1.102(d)).

include COVID-19 safety clauses in their federal contracts, thus allowing those federal contractors to voluntarily comply with the Task Force guidelines." Doc. 97 at 11-12.   Defendants' purported concern with allowing "federal contractors to voluntarily comply with the Task Force guidelines, including requiring their employees to be vaccinated," ignores the plain language of the Court's injunction. Doc.97 at 11–12.   This Court recognized that under its injunction "entities will still be free to encourage their employees to get vaccinated, and the employees will still be free to choose to be vaccinated." Doc.94 at 25.   The injunction expresses no opinion on private federal contractors enforcing their own COVID-related safeguards, including those modeled on the COVID-19 Task Force Guidance Clause. Defendants' request to "voluntarily" include the COVID-19 Task Force Guidance Clause in new and existing contracts is a backdoor attempt to pressure federal contractors to follow the Task Force Guidance while the preliminary injunction is pending.   As set forth above, there is nothing "voluntary" about Defendants' use of EO 14042 to impose COVID-19 Task Force Guidance Clauses into federal contracts.   This wink-wink attempt by Defendants to enforce EO 14042 should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' request to clarify the preliminary injunction.

Respectfully submitted this 7th day of January, 2022.

STATE OF GEORGIA                          /s/ Harold D. Melton
*Georgia Attorney General*                Harold D. Melton (Ga. Bar No. 501570)
*Christopher M. Carr*                     Charles E. Peeler (Ga. Bar No. 570399)

*/s/ Drew F. Waldbeser*
Stephen Petrany
  *Solicitor General*
Drew F. Waldbeser (Admitted Pro Hac Vice)
  *Deputy Solicitor General*
Ross W. Bergethon
  *Deputy Solicitor General*
Office of the Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334
Tel.: 404.458.3378
Fax: 404.656.2199
dwaldbeser@law.ga.gov

*Counsel for State of Georgia Plaintiffs*

Misha Tseytlin (Admitted Pro Hac Vice)
  *Special Assistant Attorneys General for Plaintiffs the State of Georgia, Governor Brian P. Kemp, in his official capacity, Commissioner Gary W. Black, in his official capacity, and the Board of Regents of the University System of Georgia*

Troutman Pepper Hamilton Sanders LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street N.E.
Atlanta, Georgia 30308-2216
Tel.:   404.885.3000
Fax:   404.962.6515
Harold.Melton@troutman.com

*Counsel for State of Georgia Plaintiffs*

*/s/ Paul H. Dunbar III*
Paul H. Dunbar III (Ga. Bar No. 233300)
Capers Dunbar Sanders & Bellotti, LLP
2604 Commons Boulevard
Augusta, Georgia 30909
Tel.: 706.722.7542
pauldunbar@bellsouth.net

*Local Counsel for Plaintiff-States and Agencies*

STATE OF ALABAMA
*Office of the Attorney General Steve Marshall*

*/s/ Edmund G. LaCour Jr.*
Edmund G. LaCour Jr. (Admitted Pro Hac Vice)
  *Solicitor General*
Thomas A. Wilson (Admitted Pro Hac Vice)
  *Deputy Solicitor General*
Office of the Attorney General
501 Washington Ave.
Montgomery, Alabama 36130

*/s/William G. Parker, Jr.*
William G. Parker, Jr. (Admitted Pro Hac Vice)
  *General Counsel*
Office of the Governor
Alabama State Capitol
600 Dexter Avenue, Room N-203
Montgomery, Alabama 36130
Tel.: 334.242.7120
Fax: 334.242.2335
Will.Parker@governor.alabama.gov

*Counsel for Governor Kay Ivey*

Tel.: 334.353.2196
Fax: 334.353.8400
Edmund.LaCour@AlabamaAG.gov
Thomas.Wilson@AlabamaAG.gov

*Counsel for Plaintiffs State of Alabama
and Alabama Agencies*

STATE OF IDAHO
*Office of the Attorney General
Lawrence G. Wasden*

*/s/  W. Scott Zanzig*
W. Scott Zanzig (Admitted Pro Hac
Vice)
  *Deputy Attorney General*
954 W. Jefferson, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Tel.: 208.334.2400
Fax: 208.854.8073
scott.zanzig@ag.idaho.gov

*Counsel for the State of Idaho*

STATE OF KANSAS
*Office of Attorney General Derek
Schmidt*

*/s/ Brant M. Laue*
Brant M. Laue (Admitted Pro Hac Vice)
  *Solicitor General*
20 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Tel.: 785.296.2215
Fax: 785.296.6296
brant.laue@ag.ks.gov

*Counsel for the State of Kansas*

STATE OF SOUTH CAROLINA
*Office of South Carolina Attorney General Alan Wilson*

*/s/ J. Emory Smith, Jr.*
J. Emory Smith, Jr. (Admitted Pro Hac Vice)
    *Deputy Solicitor General*
Thomas T. Hydrick (Admitted Pro Hac Vice)
    *Assistant Deputy Attorney General*
Office of the Attorney General
P.O. Box 11549
Columbia, South Carolina 29211
Tel.: 803.734-.680
Fax: 803.734.3677
esmith@scag.gov

*Counsel for the State of South Carolina*

STATE OF SOUTH CAROLINA
*Office of Governor Henry McMaster*

*/s/ Thomas A. Limehouse, Jr.*
Thomas A. Limehouse, Jr. (Admitted Pro Hac Vice)
    *Chief Legal Counsel*
Wm. Grayson Lambert (Admitted Pro Hac Vice)
    *Senior Legal Counsel*
Michael G. Shedd (Admitted Pro Hac Vice)
    *Deputy Legal Counsel*
Office of the Governor
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
Tel.: 803.734.2100
tlimehouse@governor.sc.gov

*Counsel for Henry McMaster, in his official capacity as Governor of the State of South Carolina*

STATE OF WEST VIRGINIA
*Office of Attorney General Patrick Morrisey*

*/s/ Lindsay See*
Lindsay See (Admitted Pro Hac Vice)
    *Solicitor General*
Office of the Attorney General
State Capitol Complex
Bldg. 1, Room E-26
Charleston, West Virginia 25305
Tel.: 304.558.2021
Lindsay.S.See@wvago.gov

*Counsel for the State of West Virginia*

STATE OF UTAH
*Office of the Attorney General Sean Reyes*

*/s/ Melissa A. Holyoak*
Melissa A. Holyoak (Admitted Pro Hac Vice)
    *Solicitor General*
Office of the Attorney General
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, Utah 84114-2320
Tel.: 385.271.2484
melissaholyoak@agutah.gov

*Counsel for the State of Utah*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 7, 2022, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/DOC system which will automatically send email notification of such filing to all counsel of record.

This 7th day of January, 2022.

*/s/ Harold D. Melton*
Harold D. Melton (Ga Bar No. 501570)
Troutman Pepper Hamilton Sanders LLP
Bank of America Plaza, Suite 3000
600 Peachtree Street N.E.
Atlanta, Georgia 30308-2216
Harold.Melton@Troutman.com
(404) 885-3000
(404) 885-3900
